**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | |
|---|---|
| **JOSHUA INGRAM** and **SONDA CRAWFORD**, on behalf of themselves and all others similarly situated, | ) ) ) ) Case No. _____ |
| Plaintiffs, | ) **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | ) ) **JURY DEMAND ENDORSED HEREON** |
| **MANE, INC.,** | ) |
| Defendant. | ) |

Named Plaintiffs Joshua Ingram ("Plaintiff Ingram") and Sonda Crawford ("Plaintiff Crawford") (together, "Named Plaintiffs"), on behalf of themselves and all others similarly situated, for their collective and class action Complaint against Defendant MANE, Inc. ("Defendant"), state and allege the following:

**INTRODUCTION**

1. This case challenges policies and practices of Defendant that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. Chapter 4111, the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, and O.R.C. § 2307.60.

2. Named Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself and other employees similarly situated." Named Plaintiffs bring this case on behalf of themselves and other "similarly situated" persons who may joined this case pursuant to § 216(b).

3. Named Plaintiffs also bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and other members of classes of persons, defined herein, who assert factually related claims under the OMFWSA, the OPPA, and O.R.C. § 2307.60.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Named Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Named Plaintiffs' Ohio state law claims pursuant to 28 U.S.C. § 1367, because the Ohio claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendant is domiciled and conducts business in this district and division, and because a substantial part of the events or omissions giving rise to Named Plaintiffs' claims occurred here.

## PARTIES

7. Named Plaintiff Ingram is an adult individual residing in Lebanon, Ohio. His notice of consent to join is attached as **Exhibit A**.

8. Named Plaintiff Crawford is an adult individual residing in Maineville, Ohio. Her notice of consent to join is attached as **Exhibit B**.

9. At all relevant times, Named Plaintiffs were non-exempt employees of Defendant within the meaning of the FLSA and Ohio law.

10. Defendant is a for-profit corporation formed under the laws of the State of Ohio and is registered to do business in the State of Ohio. According to records maintained by the Ohio Secretary of State, Defendant's registered agent is Corporation Service Company at 1160 Dublin

Road, Suite 400, Columbus, OH 43215. Defendant's principal place of business is 2501 Henkle Drive, Lebanon, OH 45036 (Warren County).

11. At all relevant times, Defendant has been an employer within the meaning of the FLSA and Ohio law.

12. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

## FACTUAL ALLEGATIONS

13. Defendant is a flavor and fragrance manufacturer for certain consumer goods, including, but not limited to, capsules for e-cigarettes, dry powder for food, dog food, and drinks.

14. Defendant employed or employs Named Plaintiffs and others similarly situated as hourly non-exempt employees in its facilities located in Ohio and New Jersey.[1]

15. Named Plaintiffs and others similarly situated were involved in the manufacturing of various flavors and fragrances and other ingredient-like products.

16. Named Plaintiffs and others similarly situated were non-exempt hourly employees of Defendant.

17. Plaintiff Ingram's job title was Automation Control Technician. Plaintiff Ingram was employed with Defendant from approximately 2018 to February 2024.

18. Plaintiff Crawford's job title is Cap. 1 Operator. Plaintiff Crawford has worked for Defendant since approximately July 5, 2022, first as a temporary employee, then being directly hired around October 2022.

19. Named Plaintiffs and others similarly situated regularly worked more than 40 hours per workweek, entitling them to overtime compensation under the FLSA and the OMFWSA.

---

[1] https://www.mane.com/locations (last viewed 9/12/24).

3

20. Named Plaintiffs and those similarly situated were also entitled to payment of all wages earned on a semi-monthly basis under the OPPA.

**Meal Break Violations**

21. During relevant times, and at least while Named Plaintiff Ingram was employed, Defendant had a policy and practice of deducting 30-minute unpaid meal breaks from employees' time worked, including Plaintiff Ingram and those similarly situated.

22. However, Plaintiff Ingram and those similarly situated were often interrupted during their meal breaks or were unable to take their full 30-minute meal breaks due to work duties.

23. Despite these interruptions and incomplete meal breaks, Defendant continued to deduct 30 minutes from Plaintiff Ingram's and similarly situated employees' time worked.

24. Additionally, for any meal periods that were enjoyed, but were approximately 20-minutes or less but still deducted from hours worked, Defendant violated the FLSA and Ohio law by not compensation Named Plaintiff Ingram and others similarly situated for the entirety of the unpaid short rest breaks.

25. Defendant failed to accurately record and compensate Plaintiff Ingram and those similarly situated for all time worked, including time worked during interrupted unpaid meal breaks and unpaid short rest breaks of 20 minutes or less.

26. As a result, Defendant failed to pay Plaintiff Ingram and those similarly situated for all hours worked, including overtime compensation for hours worked in excess of 40 in a workweek.

**Regular Rate Violations**

27. In addition to their hourly wages, Named Plaintiffs and others similarly situated were paid non-discretionary compensation, including but not limited to annual bonuses and/or

bonuses given for picking up extra shifts (collectively referred to as "Bonuses"), that were not calculated into their regular rates for the purposes of calculating overtime compensation.

28. Defendant failed to include this additional compensation into the regular rate of pay for Named Plaintiffs and others similarly situated when calculating overtime compensation, thereby resulting in the underpayment of overtime pay and Defendant's failure to pay the same on a semi-monthly basis.

29. There is no dispute that the missing pay is owed. For example, Defendant's Human Resources department sent a letter to Plaintiff Crawford, on August 9, 2024, and, upon information and belief, Defendant's other, yet-to-be identified similarly situated employees ("Payment Letter") that stated,

> MANE recently determined that the bonuses paid in 2024, 2023, and 2022 (for years 2023, 2022, and 2021, respectively) pursuant to the MANE Benefit-Sharing Plan had not fully taken into account the calculation of the regular rate of pay and overtime compensation for hours worked during the years to which the bonuses related. Further, the Company also determined the extra compensation paid in 2022 for working additional special incentive shifts was not fully taken into account when calculating the regular rate of pay and overtime compensation for hours worked. To address that oversight, a check is enclosed. This check represents at least double the additional overtime compensation you should have received once these bonuses are taken into account. This has been calculated for all workweeks in which you worked over 40 hours in 2021, 2022, and 2023.

30. Also, Defendant, by way of Defendant's Counsel, emailed Named Plaintiffs' Counsel on August 9, 2024, at 11:43 AM ("Email 1"), saying the following:

> After looking into the issue . . . Mane has issued payments to its current and former nonexempt employees for overtime owed (plus liquidated damages) on the annual bonuses as well as bonuses given for picking up extra shifts for the past three years. The payments should be visible in employees' ADP today, and I believe they will get the physical checks early next week.

5

31. On August 9, 2024, at 2:10 PM, Defendant, by way of Defendant's Counsel, emailed Named Plaintiffs' Counsel ("Email 2"), saying the following:

> Checks and letters to employees are currently being prepared, and will be placed in the mail on Monday. Attached is a copy of what will be sent to Ms. Crawford. With respect to your other emails, you alerted us to an issue, Mane looked into the issue, realized it needed to be remedied, and promptly remedied it.

32. As expressed in Payment Letter, and confirmed in Email 1 and Email 2, Defendant concedes that the Bonuses were not calculated into the Named Plaintiffs and others similarly situated regular rates for the purposes of calculating overtime compensation.[2]

33. As a result, Defendant admitted that it violated the FLSA and the OMFWSA because Defendant failed to make payments to Named Plaintiffs and others similarly situated for all the overtime compensation earned at one and one-half times their properly calculated regular rates for hours worked in excess of 40 in a workweek in a timely fashion.

34. Defendant admitted that it violated the OPPA because it did not pay Named Plaintiffs and others similarly situated all wages undisputedly owed on a semi-monthly basis.

35. Defendant also admitted that they violated the FLSA when they sent a check to Plaintiff Crawford, and, upon information and belief, others similarly situated, attempting to resolve and settle potential FLSA claims without the supervision of the Secretary of Labor or the

---

[2] In the interest of minimizing cost and expenditure of judicial resources, Named Plaintiffs' Counsel emailed Defendant's Counsel a tolling agreement on July 22, 2024, following up on July 26, 2024. Defendant's Counsel responded the same day that they were "looking at this, but the decisionmakers at the client have not been available" and that they would "follow up next week." On July 31, 2024, Defendant's Counsel emailed Named Plaintiffs' Counsel stating that their "client may be willing to consider a tolling agreement limited only to the bonus issue. Would you be willing to draw up a tolling agreement limited to the bonus issue for our consideration?" Named Plaintiffs' Counsel sent the revised tolling agreement back the next day. On August 7, 2024, Named Plaintiffs' Counsel emailed Defendant's Counsel for status, with Defendant's Counsel responding the same day, "We're working on redlines to the tolling agreement, and hope to have those to you this week." On August 9, 2024, Named Plaintiffs' Counsel again asked for status, at which time Defendant's Counsel responded with Email 1.

courts. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 405-06 (8th Cir. 2015) ("Before employees sue, they can waive their FLSA rights only if they agree to accept full payment of a settlement offered by their employer, they receive full payment of that settlement, and the settlement was supervised by the Secretary of Labor. After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment.") (citations omitted); *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 869-70 (S.D. Ohio 2011) ("FLSA rights can only be settled through the supervision of the Secretary of Labor or the courts").

36. In sending the Payment Letters and accompanying check, Defendant failed to include proper release language or language notifying Named Plaintiffs and others similarly situated of the rights Defendant may allege are being waived, or that they may be waiving statutory rights by accepting the check from Defendant. *Beauford*, 781 F.3d at 406-07 ("employees cannot 'agree to accept payment' unless they are given notice of the rights that they are waiving"); *Woods v. RHA/Tennessee Group Homes, Inc.*, 803 F. Supp. 2d 789, 800 (M.D. Tenn. 2011) ("§216 'was designed to offer a choice to an employee who had been improperly denied wages under the FLSA: he or she might choose between [(1)] action by the Administrator under . . . subsection (c) for simply the amount which is owed to him and [(2)] his own individual right of action under subsection (b) for both back wages and liquidated damages together with a reasonable attorney's fee.'") (citing *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007)).

37. "Payment of money is not enough to prevent litigation . . . There must also be a release." *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986). Defendant apparently expects Named Plaintiffs and others similarly situated to "cash[] their checks without signing any document that looked remotely like a release." *Id*. "[I]n determining the validity of a

7

waiver, the key inquiry is whether the employee 'agreed' to accept the employer's payment in settlement of the employee's potential FLSA claims." *Woods*, 803 F. Supp. 2d at 799.

38. Additionally, there is no indication that Defendant informed Named Plaintiffs or any similarly situated employee of "additional recovery rights [they] may have had" under OPPA or O.R.C. § 2307.60, or that they may be potentially waiving those rights. *Beauford*, 781 F.3d at 406 n.6.

39. Defendant's conduct attempts to circumvent the Court's supervision of a wage and hour dispute and to prevent Named Plaintiffs from verifying whether any payment and purported liquidated damages were properly calculated.

40. Also, Defendant's conduct attempts to hide from Named Plaintiffs whether all similarly situated employees in both Ohio and New Jersey have been included in Defendant's attempt to avoid litigation.

41. Neither Named Plaintiff has cashed any check that Defendant sent.

42. To the extent any, yet-to-be identified, similarly situated employee has cashed a check, such payments cannot be used to offset overtime compensation that is due no later than the regular pay day after the overtime compensation was earned. *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 590 (6th Cir. 2002) ("[T]he statute is violated even if the employer eventually pays the overtime amount that was due.") (citing *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001)). "[A]n employer must pay overtime 'promptly and when due' and is not allowed to compromise or settle sums due employees by 'withholding wages beyond the time when they should be paid.'" *Herman*, 308 F.3d at 591 (citing *Roland Electric Co. v. Black*, 163 F.2d 417, 421 (4th Cir. 1947)). Instead, such payments are no more than a gift or bonus, which in turn must be calculated into the employees' regular rates of pay.

8

43. Even if payments are creditable under 29 U.S.C. § 7(h) (which they are not), such payments "may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Herman*, 308 F.3d at 592 (*citing* 1985 WL 304329, at *3 (DOL Wage-Hour, December 23, 1985)).

44. Thus, Defendant's intent in sending Payment Letter with a check to Plaintiff Crawford, and, upon information and belief, others similarly situated was to chill participation in this lawsuit, anticipated by Defendant's Counsel. *Lewis*, 789 F. Supp. 2d at 871-72, ("Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit.") (citing *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003)); "[T]he court expressed its displeasure with the defendant's actions, which, the court surmised, were at least partly calculated to prevent potential class members from opting in to this litigation." *Woods*, 803 F. Supp. 2d 794.

45. Defendant also improperly communicated with Plaintiff Crawford, via the August 9, 2024, Payment Letter they sent her with a check, as Defendant knew she was represented by Plaintiffs' Counsel.

46. As can be shown by the Payment Letter, Email 1 and Email 2, and Defendant's actions, Defendant has not acted in good faith.

47. Defendant willfully violated the FLSA and Ohio law by failing to pay Named Plaintiffs and those similarly situated all overtime compensation earned, by failing to pay for all time worked during interrupted meal breaks and short rest breaks, by failing to pay overtime compensation at the correctly calculated regular rate of pay, by failing to pay them all wages due on a semi-monthly basis, and by attempting to mislead Named Plaintiffs and others similarly

9

situated into thinking they were resolving their claims for unpaid wages and that they did not have a right to proceed for all remedies under the law, as described herein.

## COLLECTIVE ACTION ALLEGATIONS

48. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

49. Named Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b).

50. The FLSA Collective members who are "similarly situated" to Named Plaintiff Ingram with respect to Defendant's FLSA meal break violations consist of:

> **All present and former hourly individuals who performed work for Defendant, including direct hires and temporary employees, who were subjected to Defendant's meal break deduction policy, and who worked 40 or more hours in a workweek during the period three (3) years preceding the commencement of this action through its final disposition ("FLSA Meal Break Collective")**.

51. The FLSA Collective members who are "similarly situated" to both Named Plaintiffs with respect to Defendant's FLSA regular rate of pay violations consist of:

> **All present and former hourly individuals who performed work for Defendant, including direct hires and temporary employees, who were paid for more than 40 hours in a workweek, and who were paid additional compensation, including, but not limited to, Bonuses during the period three (3) years preceding the commencement of this action through its final disposition ("FLSA RROP Collective")**.

52. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were hourly employees of Defendant, all were subjected to and injured by Defendant's unlawful practice of automatically deducting unpaid meal breaks but suffering and permitting Named Plaintiff Ingram and others similarly situated to continue working through or being interrupted during such unpaid meal breaks and Defendant's unlawful practice of excluding the Bonuses from the calculation of employees' "regular rates" for overtime compensation. All have

10

the same respective claims against Defendant for unpaid wages and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

53. Court-authorized notice of this case to similarly situated employees pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be informed of the pendency of this action and given them the opportunity to "opt in."

54. Named Plaintiffs cannot yet state the exact number of similarly situated persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and was required to maintain, pursuant to the FLSA. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2.

## CLASS ACTION ALLEGATIONS
### (Ohio Classes)

55. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

56. Named Plaintiff Ingram brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under the laws of the State of Ohio consisting of:

> **All present and former hourly individuals who performed work for Defendant in Ohio, including direct hires and temporary employees, who were subjected to Defendant's meal break deduction policy, and who worked 40 or more hours in a workweek during the period two (2) years preceding the commencement of this action through its final disposition ("Ohio Meal Break Class").**

57. Named Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and other members of a class of persons who assert claims under the laws of the State of Ohio consisting of:

> **All present and former hourly individuals who performed work for Defendant in Ohio, including direct hires and temporary employees, who were paid for more than 40 hours in a workweek, and who were paid additional compensation, including, but not limited to, Bonuses during the period three (2) years preceding the commencement of this action through its final disposition ("Ohio RROP Class").**

11

58. The Ohio Meal Break Class and Ohio RROP are collectively referred to as the Class Ohio Classes, which are so numerous that joinder of all class members is impracticable. While Named Plaintiffs cannot yet state the exact number of class members, they estimate more than several hundred employees work at the Lebanon location alone. The number of class members as well as their identities are ascertainable from the payroll records Defendant has maintained, and was required to maintain, pursuant to Ohio law. Ohio Const. Art. II, § 34a.

59. There are questions of law or fact common to the Ohio Classes, including but not limited to:

 a) Whether Defendant failed to pay Named Plaintiff Ingram and the Ohio Meal Break Class members for all time worked as a result of deducting 30-minute meal breaks while suffering and permitting them to continue working for Defendant's benefit.

 b) Whether Defendant miscalculated the overtime compensation it paid to Named Plaintiffs and other Ohio RROP Class members by excluding Bonuses from the calculation of their "regular rates" for purposes of overtime compensation.

 c) Whether Named Plaintiffs and other Ohio RROP Class members would have received additional overtime compensation if Bonuses had properly been included in their "regular rates" of pay, and, if so, in what amount.

 d) Whether Defendant failed to pay Named Plaintiffs and other Ohio RROP Class members undisputed wages earned on a semi-monthly basis, including availability of remedies under OPPA.

 e) The nature and extent of class-wide injury and the measure of damages for those injuries, including remedies under O.R.C. § 2307.60.

60. Named Plaintiffs' and the Ohio Classes have all sustained similar types of damages as a result of Defendant's failure to comply with the OMFWSA, OPPA, and O.R.C. § 2307.60.

61. Named Plaintiffs' claims are typical of the claims of other members of the Ohio Class. Named Plaintiffs' claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other Class members.

62. Named Plaintiffs and the Ohio Classes have all been injured in that they have been uncompensated due to Defendant's common policy, practice, and willful conduct. Defendant's corporate wide policies, practices and willful conduct affected the Ohio Classes similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the Ohio Class members.

63. Named Plaintiffs and the Ohio Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, policies, and willful conduct of Defendant.

64. Named Plaintiffs will fairly and adequately protect the interests of the Ohio Classes. Named Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Ohio Class members.

65. Named Plaintiffs' counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Classes in this case.

66. The questions of law or fact that are common to the Ohio Classes predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Ohio Classes, listed above, are common to the respective Ohio Class as a whole, and predominate over any questions affecting only individual Class members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and

demands on court resources. Many Ohio Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

68. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

69. Named Plaintiffs bring this claim for violation of the FLSA's overtime provisions on behalf of themselves and the respective FLSA Collective members who will join this case pursuant to 29 U.S.C. § 216(b).

70. The FLSA requires that hourly and other non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate." 29 U.S.C. § 207(a)(1).

71. Named Plaintiffs and the FLSA Collective members should have been paid overtime compensation at the rate of one and one-half times their properly calculated "regular rate" for all hours worked in excess of forty (40) hours per workweek.

72. Defendant failed to pay all time worked by deducting 30-minute unpaid meal breaks, yet suffering and permitting Named Plaintiff Ingram and others similarly situated to continue working through the interrupted unpaid breaks or otherwise by failing to pay for short rest periods of 20 minutes or less.

73. Defendant miscalculated and underpaid the overtime compensation it paid to Named Plaintiffs and the FLSA Collective members by excluding Bonuses from the calculation of their "regular rates."

74. By engaging in that practice, Defendant willfully violated the FLSA and regulations thereunder that have the force and effect of law.

75. As a result of Defendant's violations of the FLSA, Named Plaintiffs and the FLSA Collective members were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles them to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

76. In violating the FLSA, Defendant, lacking a good faith basis, acted willfully and with reckless disregard for clearly applicable FLSA provisions.

## COUNT TWO
### (Ohio Classes - Overtime Violations)

77. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

78. Named Plaintiffs bring this claim for violation of the OMFWSA, on behalf of themselves and all members of the respective Ohio Classes for which certification is sought pursuant to Fed. R. Civ. P. 23.

79. At all times relevant, Defendant was an employer covered by the OMFWSA.

80. Defendant violated Ohio law by failing to pay all time worked by deducting 30-minute unpaid meal breaks, yet suffering and permitting Named Plaintiff Ingram and others similarly situated to continue working through the interrupted unpaid breaks or otherwise by failing to pay for short rest periods of 20 minutes or less

81. Defendant violated the OMFWSA by excluding Bonuses from the calculation of employees' regular rate of pay for purposes of overtime compensation.

82. Defendant's violations of the OMFWSA injured Named Plaintiffs and the respective Ohio Class members in that they did not receive overtime compensation due to them pursuant to that statute.

83. Named Plaintiffs seek unpaid overtime, and reimbursement of costs and attorney's fees under the OMFWSA.

84. In violating the OMFWSA, Defendant, lacking a good faith basis, acted willfully and with reckless disregard for clearly applicable the OMFWSA provisions.

## COUNT THREE
### (Ohio RROP Class – Violation of the OPPA)

85. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

86. Named Plaintiffs bring this claim for violation of the OPPA on behalf of themselves and all members of the Ohio RROP Class for which certification is sought pursuant to Fed. R. Civ. P. 23.

87. At all times relevant to this Complaint, Defendant employed Named Plaintiffs and the Ohio RROP Class within the meaning of the OPPA and was subject to its compliance.

88. The OPPA provides that employers shall pay covered employees all wages, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month.

89. At all times material to this Complaint, Defendant did not pay employees for all overtime wages at one and a half times their properly calculated regular rate, within 30 days of performing the work.

90. Named Plaintiffs, and upon information and belief, the Ohio RROP Class member's wages remain unpaid for more than 30 days beyond their regularly scheduled payday, in violation of the OPPA.

91. The unpaid wages are undisputed, as demonstrated by the admissions in Email 1 and Email 2, including the Payment Letter sent to Plaintiff Crawford on August 9, 2024, and, upon information and belief, the Ohio RROP Class.

92. Accordingly, Named Plaintiffs and the Ohio RROP Class are entitled to all remedies available under the OPPA.

## COUNT FOUR
### (Ohio Classes and Civil Penalties for Criminal Acts – O.R.C. § 2307.60)

93. Named Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

94. Named Plaintiffs bring this claim for Civil Penalties for Criminal Acts, pursuant to O.R.C. § 2307.60 on behalf of themselves and all members of the Ohio Classes for which certification is sought pursuant to Fed. R. Civ. P. 23.

95. The FLSA, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

96. By its acts and omissions described herein, Defendant has willfully violated the FLSA and Named Plaintiffs and the Ohio Class members from the state of Ohio were injured as a result.

97. Ohio R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

98. As a result of Defendant's willful violations of the FLSA, Named Plaintiffs and the Ohio Classes from the state of Ohio are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiffs, on behalf of themselves, the FLSA Collective, and the Ohio Classes, respectfully request that the Court:

A. Direct that Court-approved notice be issued pursuant to 29 U.S.C. § 216(b) to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiffs and other members of the Ohio Classes;

C. Enter judgment against Defendant and in favor of Named Plaintiffs, the Opt-Ins who join, and the Ohio Class members;

D. Award Named Plaintiffs and the FLSA Collective members compensatory damages in the amount of their unpaid wages and overtime pay, as well as liquidated damages in an equal amount for Defendant's FLSA overtime violations;

E. Award Named Plaintiffs and the Ohio Classes unpaid wages not paid on a semi-monthly basis, plus liquidated damages in an amount equal to six per cent (6%) of the amount of the unpaid wages still unpaid or two hundred dollars ($200) per violation, whichever is greater;

F. Find that Defendant acted willfully and without a good faith basis for its violations of the FLSA and O.R.C. § 2307.60;

G. Award Named Plaintiffs and the Ohio Classes compensatory and punitive damages pursuant to O.R.C. § 2307.60;

H. Award Named Plaintiffs, the Opt-Ins who join, and the Ohio Classes pre-judgment and post-judgment interest at the statutory rate;

I. Award Named Plaintiffs, the Opt-Ins who join, and the Ohio Classes all attorneys' fees and costs incurred in prosecuting this action; and,

J. Award Named Plaintiffs, the Opt-Ins who join, and the Ohio Classes any such further relief as the Court deems equitable and just.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
1360 E 9th St., Suite 808
Cleveland, OH 44114
Telephone: (216) 230-2955
Facsimile: (330) 754-1430 (Fax)
Email: rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
7034 Braucher St NW, Suite B
North Canton, OH 44720
Telephone:  330-470-4428
Facsimile:  330-754-1430
Email:  hans@ohlaborlaw.com

*Counsel for Named Plaintiffs*

## JURY DEMAND

Named Plaintiffs hereby demand a trial by jury on all issues so triable.

*/s/ Robi J. Baishnab*
*Counsel for Named Plaintiffs*